**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TERRY HOWELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 16-0257-WS-B** |
| | ) | |
| **ALABAMA LAW ENFORCEMENT** | ) | |
| **AGENCY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter comes before the Court on defendant's Motion for Summary Judgment (doc. 36). The Motion has been extensively briefed and is now ripe for disposition.[1]

**I.     Nature of the Case.**

Because the parties' summary judgment filings devote considerable attention to documenting and discussing events that date back to 2008 or even earlier, a helpful starting place is to identify the particular claims joined in this action.

Plaintiff, Terry Howell, was a longtime employee of defendant, Alabama Law Enforcement Agency ("ALEA"). As set forth in the Complaint, Howell (who is African

---

[1]     In conjunction with his response to the Motion for Summary Judgment, plaintiff filed a document styled "Suggested Determinations of Undisputed Fact and Conclusion of Law" (doc. 41). Under the current iteration of the Local Rules, such a filing is no longer required or permitted. *See* Civil L.R. 56(b) (authorizing filing of brief and evidence relied upon, but providing that "[n]o other supporting documents may be filed absent Court order"). Accordingly, plaintiff's Suggested Determinations of Undisputed Fact and Conclusions of Law are **stricken**. Also, the parties collectively submitted dozens of exhibits spanning more than 800 pages (docs. 36, 42-47, 48), significant portions of which are not referenced in their memoranda. Courts have frowned on the all-too-prevalent litigation practice of stuffing a record with exhibits and leaving it to the court to sift through an undifferentiated mass of uncited materials in search of facts that might help one side or the other. The Federal Rules of Civil Procedure provide that "[t]he court need consider only the cited materials." Rule 56(c)(3), Fed.R.Civ.P. The Court exercises its discretion not to consider the uncited exhibits and portions of exhibits in the summary judgment record.

American) claims to be aggrieved by the following acts and omissions of ALEA: (i) failure to post a Lieutenant position for ABI Mobile (for which Howell would have been the most qualified candidate) in or around June 2010 (doc. 1, ¶¶ 12-13); (ii) passing over Howell for promotion to available Lieutenant positions from May 2010 to November 2010 even though he "was listed as the most qualified, eligible candidate" (*id.*, ¶ 14); (iii) denying Howell's application for promotion to Lieutenant in the Driver's License Division, Mobile office, in June 2013, and instead awarding the position to a less experienced white male (*id.*, ¶ 17); (iv) denying Howell's application for promotion to Lieutenant in the Mobile Highway Patrol Division in June 2013, even though he was the most experienced and qualified applicant, and instead awarding the position to a white female who lived in Montgomery (*id.*, ¶ 18); (v) failing to post a Lieutenant promotional slot in Mobile in 2013 (*id.*, ¶ 19); (vi) appointing a less experienced white male to perform Lieutenant duties and responsibilities for Mobile ABI in fall 2013 (*id.*, ¶ 20); (vii) passing over Howell for promotion and instead selecting lower ranked white males in June 2014 (*id.*, ¶ 21); (viii) failing to post available Supervisory Special Agent positions and promoting white males to those positions in October 2014 (*id.*, ¶¶ 22-23, 25); (ix) involuntarily transferring Howell to the Mobile Highway Patrol Division (*id.*, ¶ 24); and (x) failing to post Lieutenant positions for ABI Mobile or SSA positions for Mobile SBI from November 2013 until March 2016 (*id.*, ¶ 26). Howell pleads that these actions were "racially motivated," in violation of Title VII and 42 U.S.C. § 1981. (*Id.*, ¶ 29.)[2] Certain of these claims have since been abandoned; however, the above list represents the universe of employment actions that are or might be at issue in this case.

Although the topic of retaliation features prominently in the parties' summary judgment briefs, the "Cause of Action" section of the Complaint frames Howell's claims as sounding solely in theories of race discrimination. (Doc. 1, ¶¶ 28-30.) However, in a "Preliminary Statement," Howell's Complaint states that he seeks relief "for race discrimination and

---

[2]    In the Complaint, plaintiff also asserts that his claims "involve[] unconstitutional discrimination the subject of the consent decree and judgment entered in this Circuit in *Paradise v. Prescott*, 767 F.2d 1514[] (11th Cir.[] 1985)." (Doc. 1, ¶ 3.) Unrebutted information before this Court is that the *Paradise* consent decree was dissolved in June 1995. (Doc. 36, Exh. 27.) Accordingly, insofar as Howell might be attempting to assert a claim or cause of action against ALEA rooted in alleged violations of that consent decree, such a claim is not cognizable. The *Paradise* consent decree lapsed more than two decades ago.

retaliation." (*Id.*, ¶ 1.)  And the Complaint references an internal charge of discrimination that Howell filed in March 2008.  (*Id.*, ¶ 9.)  Based on these allegations in Howell's pleadings, both sides have treated this case as involving claims that the challenged personnel actions (as summarized above) were motivated by both race discrimination and retaliation.  The Court will do the same.  That said, in the interest of focusing this Order, extraneous facts and unwieldy arguments presented by the parties that do not relate to these specific allegations and claims will not be addressed.

## II.    Relevant Background.[3]

### A.    *Plaintiff's Employment History and Charge of Discrimination.*

Plaintiff, Terry Howell, was employed by defendant, Alabama Law Enforcement Agency (as well as a predecessor entity, the Alabama Department of Public Safety),[4] for 34 years, beginning with his appointment as a State Trooper in February 1982 and ending with his retirement in March 2016.  After 14 years as a trooper, Howell transferred to the Mobile office of ALEA's Alabama Bureau of Investigation Division ("ABI Mobile"), where he worked as an investigator.  In April 2002, he was promoted to the rank of Corporal.  (Doc. 43, Exh. 6 at 51.)

---

[3]     The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Smith v. LePage*, 834 F.3d 1285, 1296 (11th Cir. 2016) ("It is not this Court's function to weigh the facts and decide the truth of the matter at summary judgment. … Instead, where there are varying accounts of what happened, the proper standard requires us to adopt the account most favorable to the non-movants.") (citations and internal quotation marks omitted).  Thus, plaintiff's evidence is taken as true and all justifiable inferences are drawn in his favor.  Also, federal courts cannot weigh credibility at the summary judgment stage.  *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.").  Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept[s] Plaintiff's version of the facts drawing all justifiable inferences in Plaintiff's favor."  *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

[4]     Between 2013 and 2015, the Department of Public Safety and approximately a dozen other state agencies were combined and consolidated into a single umbrella agency called the Alabama Law Enforcement Agency.  (Doc. 48, Exh. 45.)  That transition took place during times relevant to this action; however, to avoid confusion and hair-splitting as to defendant's name at particular junctures, this Order will refer to Howell's employer solely as ALEA, regardless of time period, although technically he worked for the Alabama Department of Public Safety until the consolidation occurred.

In early 2008, Howell passed the Sergeant examination and became eligible for promotion to the rank of Sergeant. (Odom Decl. (doc. 42, Exh. 2), ¶ 4.) In February 2008, ALEA posted promotional slots; however, despite defendant's prior assurances to Howell to the contrary, no posting was made for a Sergeant position for ABI Mobile. (*Id.*, ¶ 7; Howell Dep. (doc. 42, Exh. 3), at 51.) On March 10, 2008, Howell filed in internal "EEO Complaint Form," in which he alleged that ALEA's failure to post the Sergeant vacancy and promote him to that position was because of his race. (Doc. 44, Exh. 10.) In the narrative accompanying his EEO Complaint, Howell wrote, "I have seen and had things done to me that I thought were unfair or racially motivated;" that "[i]t can only be concluded that the decisions on who gets promoted are racially motivated;" and that "I asked, however, that the playing field be level, and that treatment be equal." (*Id.* at 5-6.) In a memorandum dated April 10, 2008, Colonel J. Christopher Murphy notified Howell that his EEO Complaint had been investigated, and that Murphy was satisfied "that race did not play a role in the decision not to post a sergeant's position for the Mobile ABI office and that [Howell's] complaint is unfounded." (Doc. 36, Exh. 20.) Nonetheless, Murphy proceeded to post a Sergeant position for ABI Mobile "so as to eliminate any perception of unfairness that might have been raised." (*Id.*) Effective June 1, 2008, Howell was awarded the promotion to that Sergeant slot, thus resolving his EEO Complaint to his satisfaction. (Howell Dep., at 55-56; doc. 45, Exh. 19.)

### B.   *Acting Lieutenant Duties and Lieutenant Eligibility in 2009 - 2013.*

Howell remained assigned to ABI Mobile after his June 2008 promotion to Sergeant. In August 2009, a vacancy became open at ABI Mobile when incumbent Lieutenant C.J. Alexander retired. (Howell Dep., at 37.) At that time, defendant assigned Howell the duties of "Acting Lieutenant / Area Commander." (*Id.* at 36, 91.) During multiple intervals between August 2009 and fall 2013, Howell took on these "Acting Lieutenant" duties. Howell consistently received performance ratings of "Exceeds Standards" after assuming these additional responsibilities. (Doc. 46, Exh. 21, at 25, 32, 40.) In May 2010, Howell passed the Lieutenant examination, rendering him eligible for promotion to Lieutenant. (Howell Dep., at 22-23, 30.) Howell acknowledged, however, that one must apply in order to be considered for such a position. (*Id.* at 22.) Defendant's practices are unambiguous that an individual who does not apply will not be promoted. (Cook Dep. (doc. 48, Exh. 33), at 98.) Defendant placed Howell in "Band 2" for promotional consideration. (Doc. 36, Exhs. 21, 22.)

Defendant did not post a Lieutenant position for ABI Mobile between May 2010 (when Howell first became eligible for promotion to Lieutenant) and fall 2013. Plaintiff's testimony is that "there was a vacancy. They just never posted it." (Howell Dep., at 37.)[5] However, it is undisputed that the vacancy did not remain for that entire period; indeed, defendant transferred Charles Huggins (who is African American) into the ABI Mobile Lieutenant position in July 2011, and Huggins held that position until his retirement in May 2013. (Howell Dep., at 97, 100, 121-22.) During the period of summer 2010 to summer 2011, then, there was a Lieutenant vacancy in ABI Mobile. That vacancy resurfaced with Huggins' retirement in May 2013. Defendant promptly filled the resulting job opening, as William Merritt (a white male who was then a Lieutenant in the Dothan office) was assigned Lieutenant duties for ABI Mobile in 2013, and supervised both offices jointly through early 2015. (Merritt Dep. (doc. 36, Exh. 8), at 12-14, 34, 36; Howell Dep. at 123.)[6]

### C. *Lieutenant Positions for which Plaintiff Did Apply.*

Although defendant did not post the Lieutenant job for ABI Mobile between 2010 and 2013, numerous other Lieutenant positions were posted within the ALEA system between June 2010 and June 2013. (Doc. 36, Exh. 26, at 1.)[7] For example, as of June 2013, there were 15

---

[5]    The record supports this narrative. Indeed, plaintiff points to a memorandum from Captain Tim McGlothlin to Major Hugh McCall dated June 3, 2010 and requesting additional personnel for ABI Area 7, which would include Mobile. (Doc. 42, Exh. 4.) In that memo, McGlothlin wrote that "ABI's Area 7 is in desperate need of additional personnel as it is extremely shorthanded," indicated that the Area Commander position (*i.e.*, the Lieutenant slot) had been vacant since August 2009, and noted that Howell had assumed responsibilities as Acting Area Commander. (*Id.* at 1.) McGlothlin identified five vacancies (including Area Commander) and requested "that the extreme shortage of manpower be addressed as soon as possible." (*Id.* at 2.)

[6]    Merrill testified that it was "nothing new" and "nothing unusual" in his 30-year career for ALEA to place supervisory authority over multiple offices (including Dothan and Mobile) in the hands of a single Lieutenant. (Merritt Dep., at 35-36.) Defendant's evidence is that ALEA did the same thing elsewhere, such as assigning a Birmingham Lieutenant to manage the Selma ABI office, or a Huntsville Lieutenant to manage ABI offices in Sheffield and Hamilton. (Doc. 36, Exh. 26 at 3.) It was neither unprecedented nor unusual, then, for a Lieutenant in one location to be given supervisory authority over another.

[7]    Uncontroverted record evidence is that between June 2010 and June 2013, there were no fewer than 27 promotions to Lieutenant within the ALEA system throughout the State of Alabama. (Doc. 36, Exh. 26, at 1-2.)

Lieutenant positions available in the ALEA system. (Doc. 36, Exh. 23.) Howell was eligible to apply for any of those posted slots. It is undisputed, however, that he only applied for two Lieutenant positions, both in the 2013 hiring cycle. (*Id.*)[8]

The first position for which Howell applied was a Lieutenant posting for the Highway Patrol Division in Mobile. (Doc. 36, Exh. 23, at 3.) Defendant selected Lynn Sutton, a white female, to fill this vacancy. Whereas Howell was in Band 2 on the Lieutenant's list, Sutton was in Band 1 (the top band). (Doc. 36, Exh. 21.) Sutton had worked for defendant since 1986 and had amassed a diverse range of experience, including working as a state trooper, being assigned to ABI, performing homicide investigations with the Major Crimes Unit, working in the Office of Inspections, and writing policy in a special unit under the director's office. (Sutton Dep. (doc. 36, Exh. 10), at 9, 13-16.) Sutton applied for numerous Lieutenant positions across the state before landing the Highway Patrol Mobile job. (*Id.* at 30-32.) She had spent many years working at ALEA headquarters in Montgomery, and wished to make a change. (*Id.*) Substantial evidence shows that Howell and Sutton had similar qualifications. (Goolsby Aff. (doc. 48, Exh. 47).)[9]

The second Lieutenant position for which Howell applied was in the Driver's License Division in Mobile. (Doc. 36, Exh. 23, at 2.) Defendant selected Lawrence Goff, a white male, to fill this vacancy. Goff, like Howell, was in Band 2 on the Lieutenant promotion list. (Doc.

---

[8]     The record reflects that Howell also applied for a third Lieutenant slot in 2013, specifically for the Highway Patrol Division in Dothan. (Howell Dep., at 32.) Howell testified that he "subsequently withdrew [his] application" for that position because he decided that he "would be letting [ALEA] off the hook" by "giv[ing] them a reason not to post the ABI slot in Mobile." (*Id.*) The clear import of Howell's testimony on this point is that he withdrew his application for the Highway Patrol Dothan promotion to try to force the issue so that ALEA would post the Lieutenant job for ABI Mobile. His gambit was unsuccessful, however, as the ABI Mobile position was not posted even after Howell withdrew from consideration for the Highway Patrol Dothan slot.

[9]     In particular, ALEA's Personnel Director Stan Goolsby reviewed the work history files of both Howell and Sutton and deemed them comparable. According to Goolsby, "both individuals similarly had long careers with [ALEA] where they worked in multiple divisions and retired voluntarily under honorable conditions." (Goolsby Aff., at 1.) He further indicated that "[e]ach individual's performance evaluations fell into the 'exceeds standards' category throughout their careers." (*Id.* at 1-2.) Goolsby also stated that Howell's disciplinary record (while mild) was less favorable than Sutton's. (*Id.* at 2.)

36, Exh. 22.)  But unlike Howell, Goff had eight years experience as a supervisor in the Driver's License Examining Unit, and was currently performing the duties of Area Commander over that office.  (*Id.* at 2; Goff Dep. (doc. 36, Exh. 9), at 19.)  By contrast, Howell lacked experience in the Driver's License Division and acknowledged during his deposition that he was not well versed in "the more technical parts of certain driver's license issues."  (Howell Dep., at 26.) Nonetheless, Howell's stance was that he was more qualified for the promotion than Goff because, in Howell's words, "I've been on the department longer than he has."  (*Id.* at 168.)

With respect to both contested positions, a "Selection Board" met on June 25, 2013 and made recommendations to the appointing authority, Colonel Hugh B. McCall, an African American male.  (Doc. 48, Exh. 43.)  The Selection Board recommended Sutton for the Highway Patrol Mobile position, and recommended Goff for the Driver's License Mobile position.  (*Id.*) McCall ultimately approved those recommendations.  Personnel records reflect that for the Highway Patrol job, defendant wrote on Howell's application that he was not selected because "more qualified candidate selected" (doc. 36, Exh. 21, at 4).  Likewise, for the Driver's License job, defendant wrote on Howell's application that he was not selected because "other qualified applicant selected" (doc. 36, Exh. 22, at 5).

### D.     Plaintiff's Transfer and Non-Promotion in 2014 to 2016.

In 2014, defendant eliminated the previous Lieutenant list, such that anyone who wanted to be eligible for a promotion to Lieutenant needed to take and pass another promotional exam. (Howell Dep., at 43-44; doc. 36, Exh. 26, at 4.)  Howell did so in June 2014.  But no Lieutenant posting for ABI Mobile was made during 2014-2015.  (Doc. 47, Exh. 22.)  There were a small number of Lieutenant postings in other offices during that time frame; however, Howell applied for none those positions.  (Howell Dep., at 43-44.)

Effective December 1, 2014, Howell was transferred from ABI Mobile to Highway Patrol Mobile.  (Doc. 43, Exh. 6, at 4-7.)  Pursuant to this transfer (which was not voluntary), Howell retained the same rank, pay and benefits.  (Howell Dep., at 131.)  The transfer decision was made by Spencer Collier, who was at that time the Secretary of ALEA.  (Collier Dep. (doc. 48, Exh. 29), at 25.)  Collier testified that his "number-one priority was putting more troopers on the road."  (*Id.*)  When Collier was unable to obtain enough volunteers among ABI agents with trooper experience to transfer to the Highway Patrol division, he made the decision unilaterally to transfer others.  (*Id.* at 26.)  Howell, "being a former trooper, was one of the ones [Collier]

sent back to Highway Patrol." (*Id.*)  Collier made the same decisions with respect to multiple other ABI agents from around the state, including Tony Calderaro (a white male in the ABI Mobile office) and John Wall (also a white male).  (*Id.*; Howell Dep., at 131.)

Howell retired from his employment at ALEA effective March 1, 2016.  (Doc. 43, Exh. 6, at 2.)

### III.    Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed.R.Civ.P.  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations."  *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

The Eleventh Circuit has expressly rejected the notion that summary judgment should seldom be used in employment discrimination cases because they involve issues of motivation and intent.  *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004).  Rather, "the summary judgment rule applies in job discrimination cases just as in other cases.  No thumb is to be placed on either side of the scale."  *Id.* at 1086 (citation omitted); *see also Williamson v. Clarke County Dep't of Human Resources*, 834 F. Supp.2d 1310, 1318 (S.D. Ala. 2011) (recognizing and applying rule that summary judgment standard is applied equally in employment discrimination cases as in other kinds of federal actions).

## IV. Analysis.

When one cuts through the dense underbrush that clutters the summary judgment filings, it becomes clear that Howell is now pursuing claims rooted in three sets of personnel actions by defendant, to-wit: (i) the failure to post a Lieutenant position for ABI Mobile at various times when it was vacant between June 2010 and May 2016; (ii) the non-selection of Howell for the two Lieutenant positions for which he applied in 2013; and (iii) the involuntary transfer of Howell to the Highway Patrol Division in 2014. Howell contends that each of these acts or omissions violates both Title VII and § 1981 because ALEA discriminated against him on the basis of his race (African American) and retaliated against him for having engaged in protected activity (his 2008 internal EEO Complaint alleging racially discriminatory denial of promotion to Sergeant). After summarizing the applicable legal framework, the Court will examine separately each set of claims.

### A. McDonnell Douglas *Burden-Shifting Framework.*

Absent direct evidence of race discrimination or retaliation (which plaintiff has not identified and which does not appear in the record),[10] Howell must make a showing of

---

[10] "Direct evidence reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee. … [O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor[,] constitute direct evidence of discrimination." *Jones v. Gulf Coast Health Care of Delaware, LLC*, 854 F.3d 1261, 1270 (11th Cir. 2017) (citations and internal quotation marks omitted). Plaintiff does not maintain that any of his evidence falls within this narrow category of "direct evidence" of discrimination or retaliation. To be sure, Howell's brief cites the Declaration of Edward L. Odom (doc. 42, Exh. 2) for the proposition that, back in 2008, Odom was told by a person named Lynn Sutton that she barged unannounced into the office of a supervisor named Lt. Col. Floyd Bingham to confront him, and that at that time Bingham told Sutton in reference to Howell, "I am not going to stand by let that damn stupid nigger get promoted." (Odom Decl., ¶¶ 12-13.) Odom's testimony on this point would be inadmissible double-hearsay. Neither Sutton nor Bingham purports to have any recollection of any such unannounced confrontation ever occurring or any such remark ever being made. (Sutton Dep. (doc. 44, Exh. 11), at 22-23; Bingham Dep., at 38-39.) It is hornbook law that summary judgment affidavits or declarations are properly considered only insofar as their contents "set out facts that would be admissible in evidence." Rule 56(c)(4), Fed.R.Civ.P. Odom's averment about what he says Sutton told him that Bingham had told her nine years ago suffers from an insuperable double-hearsay problem and plaintiff identifies no conceivable means through which he might reduce such evidence to admissible form at trial. Therefore, it cannot properly be considered as "direct evidence" of discrimination for Rule 56 purposes. Even if it could, plaintiff acknowledges that Bingham was appointing authority for only three months (doc. 39, at (Continued)

circumstantial evidence that satisfies the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[11] Under this familiar burden-shifting analysis, plaintiff is required to make out a *prima facie* case of unlawful race discrimination or retaliation. The exact contours of the necessary showing vary depending on the nature of the claim; however, the plaintiff's burden is not heavy. *See, e.g., Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001) ("the *prima facie* requirement is not an onerous one").

If the plaintiff meets that initial burden, such a *prima facie* showing "creates a rebuttable presumption that the employer acted illegally." *Underwood v. Perry County Com'n*, 431 F.3d 788, 794 (11th Cir. 2005). At that point, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. ... If the employer does this, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination." *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) (citations and internal quotation marks omitted); *see also Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997) (outlining similar procedure for Title VII retaliation claims). A plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Brooks v. County Com'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation omitted). "The ultimate burden of persuading the trier of fact that the

_____

24), and does not identify any challenged personnel decisions that he says Bingham made during that brief span. In short, the Court finds no factual predicate for treating this as a direct evidence case, but instead evaluates Howell's claims using the circumstantial *McDonnell Douglas* framework.

[11]    Although plaintiff's claims are nominally brought under both 42 U.S.C. § 1981 and Title VII, the applicable legal standard is identical. *See, e.g., Brown v. Alabama Dep't of Transportation*, 597 F.3d 1160, 1174 n.6 (11th Cir. 2010) ("The analysis under [§ 1981] claims mirrors that under Title VII."); *Rice-Lamar v. City of Fort Lauderdale, Fla.*, 232 F.3d 836, 843 n.11 (11th Cir. 2000) ("The elements of a claim of race discrimination under 42 U.S.C. § 1981 are also the same as a Title VII disparate treatment claim in the employment context."); *Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1060 (11th Cir. 1994) ("The *McDonnell Douglas* scheme for the allocation of burdens and the order of presentation of proof also applies in § 1981 cases involving discriminatory treatment in employment situations."); *Brown v. School Bd. of Orange County, Florida*, 459 Fed.Appx. 817, 819 (11th Cir. Feb. 28, 2012) ("Title VII and § 1981 have the same requirements of proof and utilize the same analytical framework.").

defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Springer v. Convergys Customer Management Group Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007).

## B.      *Plaintiff's Retaliation Claims.*

As noted, one of Howell's theories of liability is that ALEA retaliated against him for engaging in protected activity, in violation of Title VII and Section 1981.[12]  In particular, Howell posits that defendant's failure to post an ABI Mobile Lieutenant position at certain intervals between June 2010 and March 2016, defendant's non-selection of Howell for two Lieutenant positions for which he applied in 2013, and defendant's transfer of Howell to the Highway Patrol Division in 2014 were all acts of retaliation for his protected activity.  Plaintiff theorizes that "Howell was blackballed by Defendant simply for having the temerity to seek that which was his due." (Doc. 39, at 28.)

To establish a *prima facie* case of retaliation under Title VII or § 1981, Howell must show that "(1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) he established a causal link between the protected activity and the adverse action." *Bryant v. Jones*, 575 F.3d 1281, 1307-08 (11th Cir. 2009).[13]  Plaintiff has identified statutorily protected activity, to-wit: his March 2008 internal EEO Complaint, in which he complained that defendant had failed to promote him to Sergeant because of his race. Plaintiff has also shown that he suffered adverse employment action, including defendant's

---

[12]      It is well settled that a plaintiff may sue under Title VII or § 1981 on a retaliation theory. *See, e.g., CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457, 128 S.Ct. 1951, 170 L.Ed.2d 864 (2008) ("We consequently hold that 42 U.S.C. § 1981 encompasses claims of retaliation."); *Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012) ("Title VII prohibits employers from retaliating against an employee because she has opposed any … unlawful employment practice") (citation and internal marks omitted); *Bryant v. Jones*, 575 F.3d 1281, 1309 (11th Cir. 2009) ("it is well-established in this circuit that claims for retaliation are cognizable pursuant to § 1981").

[13]      *See also Jones*, 854 F.3d at 1271 ("Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case by demonstrating (1) [he] engaged in statutorily protected activity, (2) [he] suffered an adverse employment decision, and (3) the decision was causally related to the protected activity.") (citation omitted); *Butler v. Alabama Dep't of Transp.*, 536 F.3d 1209, 1212-13 (11th Cir. 2008) ("To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events.") (citation omitted).

failure to promote him to Lieutenant and (at least arguably) its decision to force him to transfer to a less desirable trooper position.[14]  Thus, plaintiff's ability to establish a *prima facie* case of retaliation stands or falls on the causal connection element.

Most commonly, a plaintiff bringing a Title VII retaliation claim satisfies the "causal link" prong of the *prima facie* case by showing close temporal proximity between the protected activity and the adverse employment action.  *See, e.g., Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) ("Close temporal proximity between protected conduct and an adverse employment action is generally sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.") (citation and internal quotation marks omitted); *Harris v. Florida Agency for Health Care Admin.*, 611 Fed.Appx. 949, 951 (11th Cir. May 18, 2015) ("In most cases, a close temporal proximity between the protected conduct and the adverse action creates a genuine issue of material fact about the causal connection between the two.").  Where, as here, the adverse action occurred years after the protected activity, however, no causal connection may be inferred on a temporal proximity theory.  *See, e.g., Clark County School District v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to

---

[14]    *See, e.g., Holland v. Gee*, 677 F.3d 1047, 1057 (11th Cir. 2012) (explaining that Title VII's "adverse employment action" element "does not require proof of direct economic consequences in all cases," and that transfer may be adverse "if it involves a reduction in pay, *prestige or responsibility*") (citations and internal quotation marks omitted); *Hawkins v. BBVA Compass Bancshares, Inc.*, 613 Fed.Appx. 831, 836 (11th Cir. June 2, 2015) ("We have held that transferring an employee to a different position can be adverse if it involves a reduction in pay, prestige, or responsibility."); *Hart v. U.S. Atty. Gen.*, 433 Fed.Appx. 779, 781 (11th Cir. July 7, 2011) ("An involuntary transfer to a different position may also be an adverse employment action if it involves a reduction in pay, prestige, or responsibility.") (citation and internal quotation marks omitted); *Gary v. Hale*, 212 Fed.Appx. 952, 957 (11th Cir. Jan. 3, 2007) ("the repeated denial of a job promotion, despite being seemingly qualified for the position sought, constitutes an adverse employment action for purposes of Title VII"); *Ware v. Supreme Beverage Co.*, 927 F. Supp.2d 1244, 1251 (N.D. Ala. 2013) ("We use an objective test, asking whether a reasonable person in the plaintiff's position would view the employment action in question as adverse.") (citation omitted); *Torres-Sanchez v. Jefferson County Board of Health*, 2017 WL 1247496, *7 (N.D. Ala. Apr. 5, 2017) ("Plaintiff suffered an adverse employment action when he did not receive a promotion for which he had been deemed eligible by the Personnel Board and which had been budgeted for by the Health Department.").

establish a *prima facie* case uniformly hold that the temporal proximity must be very close.")
(citations and internal quotation marks omitted); *Johnson v. Mobile Infirmary Medical Center*,
2015 WL 1538774, *16 (S.D. Ala. Apr. 7, 2015) ("Adverse action taken more than a year after
the fact suggests, by itself, no causation at all."). Unless there is "other evidence tending to show
causation, if there is a substantial delay between the protected expression and the adverse action,
the complaint of retaliation fails as a matter of law." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d
1361, 1364 (11th Cir. 2007).

   In Howell's case, the protected activity occurred in March 2008, whereas the adverse
action took place years later, between June 2010 and March 2016. Therefore, plaintiff must
come forward with "other evidence tending to show causation." The Eleventh Circuit has
emphasized that where temporal proximity is lacking, "[t]o establish a causal connection, a
plaintiff must show that the relevant decisionmaker was aware of the protected conduct, and that
the protected activity and the adverse actions were not wholly unrelated." *Kidd v. Mando
American Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013) (citation and internal quotation marks
omitted); *see also Willis v. Publix Super Markets, Inc.*, 619 Fed.Appx. 960, 962 (11th Cir. Sept.
25, 2015) (affirming dismissal of retaliation claims where plaintiff "failed to establish a causal
connection between the protected activity and his termination because he did not show that any
of the decision-makers were aware of the protected conduct at the time of his termination");
*Redd v. United Parcel Service, Inc.*, 615 Fed.Appx. 598, 606 (11th Cir. June 26, 2015) ("To
demonstrate a causal connection, the plaintiff must show that (1) the decision maker knew of his
protected activity, and (2) the protected activity and adverse action were not wholly unrelated.").

   At a minimum, then, in order to make a *prima facie* showing of unlawful retaliation,
Howell must come forward with evidence that the decision makers for each of the challenged
adverse actions (*i.e.*, failure to post the ABI Mobile Lieutenant job, non-selection of Howell for
two Lieutenant jobs for which he applied in 2013, transfer of Howell to Highway Patrol in
December 2014) were aware of his 2008 EEO Complaint. He has not done so; to the contrary,
ALEA has presented substantial unrebutted evidence that those decision makers lacked any such
knowledge.[15] And plaintiff admits that Colonel Christopher Murphy, who reviewed and oversaw

---

[15]     For example, Spencer Collier, whom plaintiff identifies as "the ultimate decision
maker, beginning in 2013" (doc. 39, at 24), denied awareness of Howell's protected activity
(Continued)

the investigation of his EEO Complaint, ceased being Director of the Department of Public Safety (and no longer had authority to promote or transfer Howell) in 2010. (Doc. 39, at 24.)

In the face of such adverse evidence, Howell's sole argument to satisfy the knowledge component of his *prima facie* case of retaliation is that the ALEA decision makers "had institutional knowledge of Howell's EEO complaint through its Colonels and Secretaries" and that "Howell's 2008 EEO complaint alone created institutional knowledge of his claims of racial discrimination in the promotions process." (Doc. 39, at 23-24; *id.* at 18.) The "institutional knowledge" theory of a causal connection has been uniformly rejected in this jurisdiction; indeed, the Eleventh Circuit has consistently held that the decision maker himself or herself must have actual knowledge of the protected activity in order for the requisite causal connection to be present. *See, e.g., Bass v. Board of County Com'rs, Orange County, Fla.*, 256 F.3d 1095, 1119 (11th Cir. 2001) ("It is not enough for the plaintiff to show that someone in the organization knew of the protected expression; instead, the plaintiff must show that the person taking the adverse action was aware of the protected expression.").[16] Insofar as plaintiff relies on unpublished

---

during the relevant time period. (Collier Dep. (doc. 48, Exh. 29), at 13-14.) Moreover, ALEA did not maintain a copy of Howell's 2008 EEO Complaint in his personnel file, where it would be generally accessible to supervisors and managers. (Doc. 43, Exh. 6.) And Floyd Bingham, who was the Assistant Director of the Department of Public Safety as of June 2010, testified that he had no recollection of Howell filing an EEO Complaint in 2008. (Bingham Dep. (doc. 44, Exh. 13), at 21-22, 38-39.) Plaintiff concedes as much. (Doc. 39, at 12 ("Bingham would ultimately claim he had no recollection of Howell's 2008 EEO Complaint").)

[16]     *See also Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010) ("knowledge on the part of persons other than a decision maker cannot be imputed from other supervisors to the decision maker for purposes of a[] … retaliation claim"); *Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1262 (11th Cir. 2001) (where Board lacked actual knowledge, "all the imputing in the world is not going to change that fact" because "[d]iscrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent"); *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 800 (11th Cir. 2000) (rejecting argument "that even if the decision maker did not have knowledge of the protected conduct, knowledge should be 'imputed' to the corporation where other corporate officials or supervisors had knowledge of it"); *Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997) ("in a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression"); *Rudy v. Walter Coke, Inc.*, 613 Fed.Appx. 828, 830 (11th Cir. June 2, 2015) ("other supervisors' knowledge that the plaintiff engaged in protected conduct may not be imputed to the decisionmaker"); *Summers v. City of Dothan, Ala.*, 444 Fed.Appx. 346, 352 (11th Cir. Sept. 21, 2011) (where decision maker (Continued)

district court authority from other jurisdictions to assert that "institutional knowledge" of protected conduct suffices to establish the necessary causal connection, the Court declines to embrace that reasoning, which is fundamentally inconsistent with prevailing Circuit law.

Because Howell identifies no evidence that the actual decision makers responsible for the challenged adverse actions had knowledge of his 2008 EEO Complaint, he has not met his burden of showing a causal connection between the protected activity and the adverse actions about which he complains. Accordingly, Howell has not established a *prima facie* case of retaliation, and his retaliation claims under Title VII and § 1981 fail as a matter of law.

### C.     *Plaintiff's Race Discrimination Claims.*

For Howell's race discrimination claims, the Court will subdivide the analysis into three distinct categories of challenged adverse employment actions, to-wit: (i) ALEA's non-selection of Howell for the two Lieutenant positions for which he applied in 2013; (ii) ALEA's transfer of Howell to the Highway Patrol Division in December 2014; and (iii) ALEA's failure to post an ABI Mobile Lieutenant position at certain times between June 2010 and March 2016.

### 1.     *The 2013 Lieutenant Positions.*

In 2013, Howell submitted applications for a Lieutenant position in the Highway Patrol Division in Mobile, and for a Lieutenant position in the Driver's License Division in Mobile. He was not selected; rather, defendant promoted Lynn Sutton (a white female) for the Highway Patrol position, and Larry Goff (a white male) for the Driver's License position. Plaintiff contends that both hiring decisions were the product of unlawful race discrimination.

"In a typical failure-to-hire scenario, the plaintiff establishes a *prima facie* case of unlawful discrimination by demonstrating that: (1) she was a member of a protected class; (2)

---

denies knowledge of protected activity, "even assuming that Summers can establish that she alleged discrimination in her … conversation with Captain Draughon, we cannot impute this knowledge to the decision maker"); *Stacey-Suggs v. Board of Regents of University System of Georgia*, 44 F. Supp.3d 1262, 1270 (N.D. Ga. 2014) ("A plaintiff still must prove knowledge of the protected conduct by the decision-maker. … In the absence of an identified decision-maker, Plaintiff is … unable to establish the causal connection between her protected conduct and the adverse employment action."); *Rhodes v. Tuscaloosa County Bd. of Educ.*, 935 F. Supp.2d 1226, 1254-55 (N.D. Ala. 2013) ("Binding Eleventh Circuit precedent requires that the employer's agent or employee responsible for taking the adverse action or making the adverse decision – the decision-maker – was aware of the protected activity.") (citation omitted).

she applied and was qualified for a position for which the employer was accepting applications; (3) despite her qualifications, she was not hired; and (4) the position remained open or was filled by another person outside of her protected class." *Trask v. Secretary, Dep't of Veterans Affairs*, 822 F.3d 1179, 1191 (11th Cir. 2016) (citation and internal quotation marks omitted); *see also Griffin v. City of Demorest*, 635 Fed.Appx. 701, 705 (11th Cir. Dec. 22, 2015) ("For a failure-to-promote claim based on race, a plaintiff establishes a *prima facie* case by showing that (1) he is a member of a protected class; (2) he was qualified for and applied for the position; (3) he was rejected in spite of his qualifications; and (4) a person who was not a member of the protected class received the position."). It cannot seriously be disputed that all of these elements are satisfied with respect to the Highway Patrol and Driver's License positions. Howell plainly belongs to a protected class because he is African American. By virtue of passing the Lieutenant exam in May 2010, Howell was eligible and qualified to apply for any Lieutenant posting in the entire ALEA system statewide. Despite his qualifications, defendant rejected him for the two positions for which he applied. And defendant hired applicants outside Howell's protected class (Sutton, a white female, and Goff, a white male) to fill those two positions. Under the circumstances, Howell has plainly made a *prima facie* showing of race discrimination with respect to the two Lieutenant positions for which he applied.

Pursuant to *McDonnell Douglas*, the burden shifts to ALEA to articulate a legitimate, race-neutral reason for why it selected Sutton and Goff over Howell for the positions in question. "This burden of production is exceedingly light." *Page v. Winn-Dixie Montgomery, Inc.*, 702 F. Supp.2d 1334, 1349 (S.D. Ala. 2010); *see also Vessels v. Atlanta Independent School System*, 408 F.3d 763, 769-70 (11th Cir. 2005) (characterizing employer's burden to articulate non-discriminatory reason as "exceedingly light," and explaining that "[s]o long as the employer articulates a clear and reasonably specific non-discriminatory basis for its actions, it has discharged its burden of production") (citations omitted). Here, ALEA satisfies this burden. Documents in the summary judgment record confirm that defendant's stated reasons for selecting Sutton and Goff were that it viewed them as more qualified than Howell; moreover, defendant has articulated specific aspects of the successful applicants' qualifications (supported by record citations) that support its subjective determinations. Specifically, ALEA indicates that it viewed Sutton as more qualified than Howell for the Highway Patrol Lieutenant job because Sutton was in Band 1 (the top band) whereas Howell was in Band 2 on the promotional list, Sutton had a

broad array of experience in different areas during her lengthy career at ALEA, Sutton had experience with creation and implementation of agency policy, Sutton had demonstrated her ability to work in different locations throughout the state, and Sutton had multiple commendations in her personnel file. Likewise, ALEA shows that it viewed Goff as more qualified than Howell for the Driver's License Lieutenant vacancy because (unlike Howell) Goff had spent the vast majority of his career in the Driver's License Division, and had extensive training, experience and familiarity with supervisory duties in that office. This showing suffices to satisfy ALEA's modest intermediate burden of production under *McDonnell Douglas* with regard to the non-selection of Howell for the 2013 Lieutenant promotions.[17]

Where, as here, the employer articulates legitimate reasons for the challenged actions, the plaintiff must "show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited [discriminatory] conduct." *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008) (citation omitted). "In order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman v. AI Transport*, 229 F.3d 1012, 1037 (11th Cir. 2000). To show that the stated reason is pretext for unlawful discrimination, the plaintiff "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Vessels*, 408 F.3d at 771 (citation and internal quotation marks omitted).[18]

---

[17]    *See generally Steger v. General Elec. Co.*, 318 F.3d 1066, 1076 (11th Cir. 2003) ("A defendant may not merely state that the employment decision was based on the hiring of the 'best qualified' applicant, but must articulate specific reasons for that applicant's qualifications such as seniority, length of service in the same position, personal characteristics, general education, technical training, experience in comparable work or any combination of such criteria.") (citation and internal question marks omitted).

[18]    *See also Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (plaintiff may satisfy burden of showing pretext "by showing that [defendant's] proffered reasons are not credible"); *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1278 (11th Cir. 2008) ("The plaintiff must demonstrate weaknesses or implausibilities in the employer's proffered legitimate reasons for its action sufficient for a reasonable factfinder to disbelieve the reasons.").

To meet his burden of showing pretext, Howell relies solely on what he frames as disparate qualifications between himself and the successful applicants (Sutton and Goff). (*See* doc. 39, at 25-29.) In each case, Howell posits that the difference in qualifications "jumps off the page," thereby warranting an inference of discrimination. (*Id.*) The "jumps off the page" test to which Howell alludes was discredited and rejected by the Supreme Court more than a decade ago. *See Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457, 126 S.Ct. 1195, 163 L.Ed.2d 1053 (2006) ("The visual image of words jumping off the page to slap you (presumably a court) in the face is unhelpful and imprecise as an elaboration of the standard for inferring pretext from superior qualifications."). Instead, to show pretext based solely on a disparity in qualifications (as Howell attempts to do here), a plaintiff "must show that the disparities between the successful applicant's and [his] own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Kidd*, 731 F.3d at 1206 (citation omitted); *see also DeBene v. Baycare Health System, Inc.*, --- Fed.Appx. -----, 2017 WL 2350208, *4 (11th Cir. May 31, 2017) ("[i]n the context of a promotion, a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted") (citation omitted).[19]

Plaintiff has not met this exacting standard with regard to either Sutton or Goff. As to Sutton, plaintiff says he was more qualified than she for the Highway Patrol job because he "had actual experience, years in fact, of serving Defendant as an 'Acting Lieutenant';" he "had never come close to being suspended;" his appraisals were superior; and he "had a breadth of experience superior than that of Sutton." (Doc. 39, at 26.) But Sutton was in Band 1, whereas Howell was in Band 2, for the Lieutenant position, reflecting her superior qualifications.[20]

---

[19]    As these authorities explain, it is not enough in the pretext analysis for Howell simply to show that he was more qualified than Sutton or Goff. Accordingly, the Court rejects as contrary to law plaintiff's formulation that "the facts demonstrate that Howell was the candidate with greater qualifications and therefore ALEA violated the law in the promotion of Sutton over Howell." (Doc. 39, at 28.) The question is not whether Howell was more qualified than Sutton. The question is whether Howell was so much more qualified than Sutton that no reasonable person could have selected Sutton over Howell.

[20]    In his deposition, Howell acknowledged that "if a guy is in a top band, yeah, he should get promoted. If he earned that right and studied hard, he should be promoted." (Howell Dep., at 122.) It is undisputed that Sutton – not Howell – was in a top band for this vacancy. Plaintiff has identified no evidence suggesting any chicanery in those band assignments.

Sutton's law enforcement career dated back to 1982, like Howell's. Sutton had an extensive variety of experience in an array of positions. Sutton's formal disciplinary history was actually more favorable than Howell's. The performance evaluations of both candidates were consistently in the "exceeds standards" category. And plaintiff has identified no evidence that would support (much less mandate) a conclusion that his limited "Acting Lieutenant" experience for a few months here and there in the ABI Mobile office (both a different office and a different subject area than that to which the promotion related) rendered him clearly more qualified than Sutton. In short, contrary to plaintiff's argument, Howell's and Sutton's qualifications were actually quite similar.[21] Sutton was a highly experienced applicant with a diversity of work experiences, high-quality performance evaluations, minimal disciplinary record, and a Band 1 ranking on the Lieutenant list. Howell was a highly experienced applicant with a diversity of work experiences, high-quality performance evaluations, modest disciplinary history, and a Band 2 ranking, but also months of experience as an "Acting Lieutenant" in a different office in a different area (ABI versus Highway Patrol). To the extent they exist at all, the disparities between Sutton's qualifications and Howell's qualifications are simply not of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen Sutton over Howell. Thus, plaintiff has failed to make the requisite showing of pretext as to the Highway Patrol Lieutenant job based on a disparate qualifications theory.[22]

---

[21] ALEA's Personnel Director reviewed both Sutton's and Howell's personnel files and summarized their contents as follows: (i) "both individuals similarly had long careers with the Department of Public Safety where they worked in multiple divisions;" (ii) "[e]ach individual's performance evaluations fell into the 'exceeds standards' category throughout their careers;" and (iii) Sutton's file was "devoid of any documented instances of disciplinary action while Howell's file documents that he received disciplinary warnings on three separate occasions." (Goolsby Aff. (doc. 48, Exh. 47), at 2.)

[22] Plaintiff does not further his cause by arguing that his superior qualifications are evinced by Captain Ford's request "that Howell be promoted to Lieutenant under his command." (Doc. 39, at 27.) Ford was in charge of the Highway Patrol Division in Mobile as of 2013. (Ford Decl. (doc. 42, Exh. 5), ¶ 4.) Ford indicates that Howell would have been the "most qualified" applicant for a Lieutenant position in ABI Mobile, had one been posted. (*Id.*, ¶ 14.) But no such position was posted. Ford offers no opinions as to the relative qualifications of Howell and Sutton for the Highway Patrol position that was posted. He certainly does not indicate that Howell was far more qualified for the position than Sutton, or that he was in any way dissatisfied with or underwhelmed by Sutton's qualifications for the job. (*Id.*, ¶¶ 15-16.)

With respect to the Driver's License position, plaintiff's argument is that Howell's superior qualifications over Goff "jump off the page" because (i) "Goff had 12 years less total work experience with Howell," and (ii) Goff "lacked the actual experience of serving Defendant as an 'Acting Lieutenant.'" (Doc. 39, at 28.)  These assertions ring hollow.  If anything, as between Howell and Goff, the disparity in qualifications for the Driver's License position runs in the opposite direction.  Goff had worked in the Driver's License Division in Mobile, first as a Corporal and then as a Sergeant, continuously since 2005.  (Goff Dep. (doc. 36, Exh. 9), at 11.)  He had a bachelor's degree in criminal justice.  (*Id.* at 19.)  At the time of his selection, Goff was performing the duties of Area Commander.  (Doc. 36, Exh. 22.)  By contrast, Howell had no experience in the Driver's License Division (much less as a supervisor or acting Area Commander in the Mobile office of that division), and acknowledged in his deposition that as to technical issues, he "couldn't go in there and be the top – you know, know all the aspects of the driver's license." (Howell Dep., at 26.)  Goff could, and did.  On this factual record, plaintiff has not shown that the disparities between Goff's qualifications and Howell's qualifications were of of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen Goff over Howell for the Driver's License job.  Thus, Howell has failed to make the requisite showing of pretext as to the Driver's License Lieutenant position based on a disparate qualifications theory.

For all of the foregoing reasons, the Court concludes that plaintiff has not met his burden of showing pretext as to defendant's reasons for selecting white candidates for the two Lieutenant postings for which Howell applied in 2013.  He simply has not produced sufficient evidence for a reasonable factfinder to conclude that ALEA's stated reasons for promoting Sutton and Goff (*i.e.,* its determination that they were the most qualified applicants for those positions) were a pretext for unlawful race discrimination.  Defendant's Motion for Summary Judgment is properly **granted** as to these claims.

## 2.      *The Highway Patrol Trooper Transfer in December 2014.*

In late 2014, ALEA transferred Howell from the ABI Mobile position he had held for many years into a Highway Patrol trooper position.  Plaintiff alleges that this transfer "add[ed] insult to injury" (doc. 39, at 18), and that it was racially motivated.

To establish a *prima facie* case of discrimination as to the December 2014 transfer, Howell must show that (1) he is a member of a protected class, (2) he was subjected to adverse

employment action, (3) defendant treated similarly situated employees who are not members of his protected class more favorably, and (4) he was qualified for the job or job benefit at issue. *See, e.g., Evans v. Books-A-Million*, 762 F.3d 1288, 1297 (11th Cir. 2014); *Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 842-43 (11th Cir. 2000). Assuming, without deciding, that Howell could make the requisite *prima facie* showing, ALEA has unquestionably articulated a legitimate, nondiscriminatory reason for that transfer decision. In particular, Collier (the decision maker responsible for transferring Howell) testified that his "number-one priority was putting more troopers on the road," that there was a surplus of investigators in Mobile because of the addition of ABC enforcement agents during ALEA consolidation, that there were only two or three ABI agents in Mobile with Highway Patrol experience, and that when efforts to obtain voluntary transfers did not alleviate the trooper staffing shortage, Collier made decisions to transfer certain ABI Mobile agents to the Highway Patrol Division. (Collier Dep., at 25-26.) Plaintiff has identified no basis for concluding that Collier's explanation was pretextual or that the real reason for Howell's transfer was unlawful race discrimination. To the contrary, it is undisputed that Collier also involuntarily transferred other ABI agents to Highway Patrol trooper positions at that time, including Tony Calderaro and John Wall, both of whom are white. Plaintiff has identified nothing about his selection for transfer or the manner in which that transfer was conducted that might raise an inference that the real reason ALEA assigned him trooper duties in the Highway Patrol Division was because he is African American. Defendant's Motion for Summary Judgment is properly **granted** as to this claim.

### 3. The Failure to Post an ABI Mobile Lieutenant Position.

Howell's final category of race discrimination claims is that, at various times between June 2010 and March 2016, defendant failed and refused to post the vacant Lieutenant position for the ABI Mobile office, where Howell was performing "Acting Lieutenant / Area Commander" duties and would have been the leading applicant.[23]

---

[23]     This claim is properly joined in this litigation, as demonstrated not only by reference to Howell's Complaint (doc. 1, ¶¶ 12-13, 16, 24, 26), but also to his summary judgment brief, wherein he emphasized that "[h]is complaint is that a vacant Lieutenant position in ABI Mobile arose when Huggins retired in 2013 for which Howell was passed over in violation of Title VII and § 1981." (Doc. 39, at 15 n.12.)

In furtherance of that claim, plaintiff's evidence shows that Lieutenant C.J. Alexander retired from his job at ABI Mobile in August 2009, creating a vacancy for the Lieutenant position that was not filled until defendant laterally transferred Lieutenant Charles Huggins into the ABI Mobile job in July 2011. During the interim, Howell served as Acting Lieutenant and became eligible for promotion to Lieutenant in June 2010. Furthermore, his supervisor, Captain McGlothlin, formally requested that the Lieutenant position be posted in June 2010; however, ALEA never posted the job. Plaintiff's evidence is that had the Lieutenant position for ABI Mobile been posted between June 2010 and July 2011, Howell would have been the most qualified applicant because he was performing (and was excelling at performing) the duties of that position as Acting Lieutenant.[24] Plaintiff's evidence is that the same thing happened in May 2013, when Huggins retired. Rather than posting the Lieutenant position, ALEA named Howell the Acting Lieutenant, then transferred Lieutenant William Merritt (who was white) into that position in fall 2013.[25] Merritt performed those duties until early 2015; however, from early 2015 until March 2016 (when Howell retired) there was no Lieutenant posting for the SBI Mobile office (the successor division of ABI Mobile created by a January 2015 ALEA merger). Thus, plaintiff's evidence shows that defendant failed to post the Lieutenant position for ABI Mobile on three separate occasions when it was vacant and when Howell would have been the leading candidate for the job, to-wit: (i) June 2010 to July 2011, (ii) summer 2013; and (iii) spring 2015 to March 2016.

To parlay these facts regarding failure to post the Lieutenant position into a viable claim of race discrimination, Howell identifies a series of pertinent facts. He is African American. His supervisors had formally requested that the Lieutenant position be posted in 2010. Because of his successful performance of "Acting Commander" duties, Howell would have been the leading

---

[24] Captain Ford, who was in charge of the Highway Patrol Division in Mobile from 2010 through February 2015, averred that as of mid-2010, "Howell had been the acting Lieutenant/Commander of ABI Mobile, therefore making him the leading applicant for that position," had it been posted. (Ford Decl. (doc. 42, Exh. 5), ¶ 12.) Ford also averred that during his 33-year career at ALEA, he never saw during routine operations any request such as Captain McGlothlin's go unaddressed by defendant. (*Id.*, ¶¶ 13, 18.)

[25] Ford opined that Howell would have been "most qualified" for the Mobile ABI position had it been posted in 2013, and that he knew Howell would have applied for it. (*Id.*, ¶ 14.)

candidate to fill the position, for which he was qualified because he had passed the Lieutenant test. Between June 2010 and June 2013, defendant promoted 27 employees to the position of Lieutenant. (Doc. 36, Exh. 26.) Some 13 Lieutenant positions were posted and filled in June 2013. (Clark Aff. (doc. 48, Exh. 48.) Only two of those positions were filled by African Americans. (*Id.*) Of the 15 promotions (to all ranks) doled out by defendant in August 2010, only one went to an African American. (Doc. 47, Exh. 23.) These facts, taken together and construed in the light most favorable to Howell, support a reasonable inference that defendant declined to post the ABI Mobile Lieutenant position as a means of avoiding promotion of an African American, at a time when it was filling dozens of positions and making dozens of promotions, but seemingly awarding few promotions to African Americans systemwide.[26]

In light of Howell's threshold showing raising an inference of discrimination, ALEA can prevail on summary judgment for the failure-to-post claim only by providing a reasoned explanation, grounded in record facts, for not posting the Lieutenant position in question. However, defendant's summary judgment filings are lacking in specifics. To be sure, defendant offers conclusory remarks that "the Agency was on the cusp of a major consolidation of law enforcement" (doc. 37, at 4); that "[d]ue to the combining of 12 other state law enforcement agencies the amount of upper level supervisors and the recommended span of control would be a

---

[26] The parties devote little attention in their briefs to a legal analysis of this claim. Nonetheless, there are two ways of analyzing this evidence for *McDonnell Douglas* purposes. The first is to determine that under a traditional *prima facie* case, this evidence would satisfy the requisite elements of protected status, qualification, adverse action, and less favorable treatment than others outside the protected class. *See, e.g., Flowers v. Troup County, Ga., School Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015) ("In race-discrimination cases, a plaintiff makes out a *prima facie* case when he shows by a preponderance of the evidence (1) that he is a member of a protected racial class, (2) that he was qualified for the position, (3) that he experienced an adverse employment action, and (4) that he was replaced by someone outside of his protected class or received less favorable treatment than a similarly situated person outside of his protected class.") (citations omitted). The second is to say that, even if this evidence were to somehow fall short in a conventional *prima facie* analysis, it would still suffice to carry Howell's summary judgment burden by creating a triable issue of discriminatory intent. *See id.* ("[E]stablishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in Title VII cases.... The critical decision that must be made is whether the plaintiff has created a triable issue concerning the employer's discriminatory intent.") (citations and internal marks omitted). Either way, plaintiff has made enough of a showing to withstand summary judgment, or at least to shift the burden of production to ALEA to provide a legitimate, non-discriminatory explanation for its actions.

concern moving forward" (*id.* at 17); that "requests for positions are made all the time and not created" and "everyone wants more people" (doc. 48, at 15); and that verification of funds would be necessary (*id.*). But none of these generalities tells us anything about why defendant declined on multiple occasions to post an existing vacancy for a Lieutenant position in the ABI Mobile office, a position for which Howell would be the leading applicant by virtue of his Acting Commander duties, even though defendant was simultaneously posting and filling dozens of Lieutenant and other positions in the statewide system, predominantly with employees who were not African Americans. This unanswered, fundamental question creates a triable issue that cannot be resolved on summary judgment. Defendant's Motion for Summary Judgment is **denied** as to the racially discriminatory failure-to-post-promotional-opportunity claim.[27]

## V.     Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1.     Defendant's Motion for Summary Judgment (doc. 36) is **granted in part**, and **denied in part**;

---

[27]     In the language of *McDonnell Douglas*, ALEA has not met its intermediate burden of production. Of course, to do so, a defendant need only "produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had *not* been motivated by discriminatory animus." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citations omitted). "This burden of production is exceedingly light, but is not so ethereal as to be nonexistent" and cannot be satisfied through "cursory conclusions unbacked by evidentiary support." *Pears v. Mobile County*, 645 F. Supp.2d 1062, 1098 (S.D. Ala. 2009); *see also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (to raise genuine issue of fact, defendant "must clearly set forth, through the introduction of admissible evidence, the reasons for" the challenged personnel decision); *Steger*, 318 F.3d at 1076 ("The defendant's subjective reason for an employment action is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion.") (citation and internal quotation marks omitted); *IMPACT v. Firestone*, 893 F.2d 1189, 1193 (11th Cir. 1990) (reversing lower court's finding that defendants satisfied burden of production where they merely contended that person believed to be most qualified was hired). Defendant offers nothing other than cursory conclusions, devoid of reasonable specifics, as to why this position was not posted, where plaintiff clearly had an inside track on being awarded the promotion, even as so many other positions in the system were being posted and filled with candidates who were not African American. That is simply not good enough to satisfy its burden on summary judgment.

2. The Motion is **denied** as to plaintiff's claim of race discrimination relating to defendant's failure to post the existing, vacant position of Lieutenant in the ABI Mobile office at various times in 2010-11, 2013 and 2015-16;

3. In all other respects, the Motion is **granted**. There are no genuine issues of material fact and defendant is entitled to entry of judgment as a matter of law on plaintiff's other claims. As such, plaintiff's retaliation claims are **dismissed with prejudice**. Likewise, plaintiff's race discrimination claims relating to his non-selection for specific promotional opportunities for which he applied in 2013, and his involuntary transfer to the Highway Patrol Division in December 2014 are **dismissed with prejudice**; and

4. This action remains set for a Final Pretrial Conference on **July 25, 2017** at **3:00 p.m.**, with jury selection to follow on **August 1, 2017**.

DONE and ORDERED this 15th day of June, 2017.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE